# Commonwealth *v.* Bolger, Appellant.

*Evidence—Self-incriminating testimony—Grand jury.*

1. To entitle a party called as a witness to the privilege of silence the court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer; although if the fact of the witness being in danger be once made to appear, great latitude should be allowed to him in judging for himself of the effect of any particular question.

2. No possible infringement of the privilege of silence can be predicated of the facts that one is subpœnaed to appear as a witness before a lawful tribunal and examined on oath. The only purpose and effect of the subpœna are to enforce the performance of this duty and procure the desired attendance. It is only when he is called upon actually to testify as to self-incriminating facts that he can set up his privilege.

3. A person who has testified before a grand jury may be indicted before the same grand jury.

4. Where a person has been indicted on presentation of the grand jury before which he himself testified, he cannot successfully allege that he was deprived of his constitutional privilege of silence unless he shows by specific averments that he had asserted his constitutional privilege at a time an assertion was proper, and should have been effective, and that the protection secured to him by the constitution was denied.

*Trial—Jury—Reading evidence to jury—Practice, C. P.*

5. A trial judge cannot be convicted of reversible error because, in answer to a request made by the jury, he permits their recollection to be refreshed by reading a portion of the testimony actually delivered on the trial, concerning which some misapprehension had arisen in the minds of the jury after they had retired.

Argued Oct. 27, 1909. Appeal, No. 25, April T., 1910, by defendant, from judgment of Q. S. Allegheny Co., March T., 1909, No. 533, on verdict of guilty in case of Commonwealth v. H. M. Bolger. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Indictment for bribery. Before KENNEDY, J.

The facts appear by the opinion of the Superior Court.

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were as follows:

1. The court erred in refusing to quash the indictment upon motion of defendant's counsel.

2. The court erred in refusing defendant's offer to show by defendant that upon March 15, 1909, having been subpœnaed by the commonwealth he appeared before the grand jury in the course of its investigation which led to the indictment; that upon March 19, following his appearance the presentment in this case was handed to the court; that said presentment recommended the indictment of the defendant who had testified before the same grand jury on March 15; that the deliberations of said grand jury extended from March 15 up to and including March 22, 1909, upon which date a true bill was found against the defendant, and that the examination of the defendant when he appeared before the grand jury was confined to the circumstances involving the charge upon which the indictment was founded.

3. The court erred in recalling the jury upon April 24, 1909, and having recalled the same, in entering upon a review of part of the testimony.

4. The court erred in recalling the jury in answer to its

note and in reading to it only the testimony of the witness Ramsey, omitting contradictory testimony of witness Vilsack and defendant Bolger.

5. The court erred in not confining its instructions to the particular matter indicated by the jury in its note to the court.

*George M. Harton*, with him *John S. Robb, Jr.*, for appellant.—It has been repeatedly ruled that a defendant cannot be compelled by a subpœna to attend before a grand jury and give material testimony without knowing that his own conduct was under investigation: Counselman v. Hitchcock, 142 U. S. 547 (12 Sup. Ct. Repr. 195); United States v. Edgerton, 80 Fed. Repr. 374; State v. Froiseth, 16 Minn. 296; People v. Spencer, 66 Hun, 149.

Appellant contends that a person who has testified before a grand jury cannot be indicted before the same grand jury: United States v. Bell, 81 Fed. Repr. 830; People v. Singer, 5 N. Y. Crim. 1; Ex parte Sauls, 78 S. W. Repr. 1073; Com. v. Bradney, 126 Pa. 199.

It is contended that when the jury requests further instructions it will be presumed, unless the contrary prominently appears, that the judge in recharging covered the inquiries submitted by the jury and it is not necessary in so doing for him to repeat what he has already charged as to other matters: Fordham v. State, 112 Ga. 228 (37 S. E. Repr. 391); Gravett v. State, 74 Ga. 191; Goersen v. Com., 99 Pa. 388.

*Warren I. Seymour*, with him *William A. Blakeley*, for appellee.—We would emphasize the distinction between the rights of a defendant and the rights of a witness; (a) historically, prior to the time when a defendant became competent to testify in criminal proceedings, a witness had the right to refuse to answer an incriminating question. Hence the rights of a witness antedate those of a defendant; (b) the rights of a defendant are broader than the rights of a witness in some respects—a witness may be compelled to take the

witness stand but in Pennsylvania it is doubtful if a defendant can be so compelled.  Com. v. David, 8 Phila. 611, holds that he can and must assert his right not to incriminate himself.  In some respects the rights of a witness are broader than the rights of a defendant—a witness who takes the stand does not waive his right to refuse to answer an incriminating question, whereas a defendant who takes the stand in his own behalf, waives this right: Com. v. House, 6 Pa. Superior Ct. 92; United States v. Kimball, 117 Fed. Repr. 156; United States v. Price, 163 Fed. Repr. 904; United States v. Brown, 1 Sawy. 531; People v. Steinhardt, 47 Misc. 252 (93 N. Y. Supp. 1026); Com. v. Mosier, 135 Pa. 221.

Upon the main proposition involved in this case, the following case is directly in point: State v. Hawks, 56 Minn. 129 (57 N. W. Repr. 455); see also State v. Comer, 157 Ind. 611 (62 N. E. Repr. 452); State v. Frizell, 111 N. C. 722 (16 S. E. Repr. 409); People v. Northey, 77 Cal. 618 (19 Pac. Repr. 865).

The court's recharge to the jury was proper: People v. Foy, 138 N. Y. 664 (34 N. E. Repr. 396); State v. Manning (Vt.), 54 Atl. Repr. 181; Mormon v. State, 110 Ga. 311 (35 S. E. Repr. 152); Jameson v. State, 25 Neb. 185 (41 N. W. Repr. 138).

Opinion by Head, J., March 3, 1910:

The defendant, Bolger, was tried and convicted upon a bill of indictment which charged him with the offense of bribery or corrupt solicitation.  The indictment was not preceded by an information before a magistrate, a hearing before him, and a binding over for trial in the usual and customary manner.

It appears that the grand jury of Allegheny county, in the spring of 1909, began a general inquiry into the subject of bribery of members of city councils of Pittsburg, after such an investigation had been duly given them in charge by the court of quarter sessions then sitting.  At the conclusion of their inquiry they made a lengthy presentment reciting that they had investigated a number of separate and distinct transactions and had summoned, and presumably heard, "fifty-three wit-

nesses, including all persons publicly stated to have special information relating to such matters." One of these witnesses was Bolger, the defendant. As to some of the matters inquired into, the grand jury reported that, owing to the unsatisfactory character of the evidence produced, they were unable to make any presentment, but recommended that "further investigation be made from time to time by the district attorney under the direction of the court." As to several other independent transactions investigated, the grand jury found evidence sufficient to warrant them in presenting for indictment a number of persons. In each case the report sets forth with precision the nature and character of the alleged criminal act and gives the names of the witnesses to be summoned by the district attorney to support the several indictments suggested.

Following this presentment recommending the indictment of the present defendant, among others, the district attorney prepared, and by direction of the court, sent up a bill indorsing on it, as the witnesses for the commonwealth, the names of the two persons mentioned in the grand jury's report. It was returned a true bill. The defendant was brought to trial, was again confronted by the testimony of the same two witnesses and was found guilty.

The appellant does not allege that the bill of indictment on which he was tried lacked any legal requirement of form or substance. Nor does he complain of any error in the rulings of the learned trial court upon questions of evidence, or of the manner in which the evidence was summed up and submitted in the general charge, or that the evidence, if believed by the jury, was insufficient to support the verdict they rendered.

At the very opening of the trial the defendant moved to quash the bill, not because of any irregularity exhibited by the record as it then existed, but because of certain alleged facts dehors the record, the existence of which he offered to establish by his own testimony. The learned judge sustained the objection made to this offer and the refusal of the motion to quash followed.

"It cannot now be doubted that an indictment may be

quashed for matters not apparent upon the face of the record:"
Commonwealth v. Bradney, 126 Pa. 199.   In Commonwealth
v. Green, 126 Pa. 531, the grand jury, in the course of their
ordinary investigation of a bill charging a person with an as-
sault, incidentally heard evidence tending to show that the
house in which the assault occurred was a disorderly house
kept by one Lizzie Green.   They then made a presentment
recommending her indictment, and the court directed the dis-
trict attorney to send up a bill which was found.   A motion
to quash was made on the ground that the presentment origi-
nated in the manner above described, and in support of the
motion the court permitted a grand juror to be called and to
testify to the facts.   The bill was quashed and the Supreme
Court held that the practice was correct and affirmed the order.
It may not be unimportant to note that in the course of the
opinion, Mr. Justice CLARK says: "If the court, in the exer-
cise of its discretion, had sustained this indictment and
brought the defendant to trial and conviction upon it, it is
quite improbable that this court, on a writ of error, would
have disturbed the judgment; it is only for a flagrant abuse
of this discretion, as we have said, this court would interfere."
From these cases it would follow, we think, that if the matters
of fact offered to be proven would have furnished a legal
reason for quashing the bill, the learned trial judge would
have been wrong in denying to the defendant the opportunity
to bring them on the record by his testimony.

What then was the offer?   We quote it in full.   "Counsel
for defendant offer to show by the proposed witness, Mr.
Bolger, that upon the 15th day of March, 1909, having been
subpœnaed by the commonwealth, he appeared before the
grand jury in the course of its investigation which led to the
indictments in this and other cases; that upon the 19th day
of March following the appearance of Mr. Bolger, the pre-
sentment in this case was handed to the court; that the pre-
sentment filed upon the 19th of March recommended the in-
dictment of the defendant here who had testified before the
same grand jury on the 15th of March; that the deliberations
of said grand jury extended from the 15th of March up to

and including the 22d of March, upon which day a true bill was then found against the defendant in this case; and further that the examination of the defendant when he appeared before the grand jury was confined to the circumstances involving the charge upon which this indictment is founded."

The learned counsel for appellant argues from the existence of the facts, in the offer stated, the conclusion clearly follows that the defendant was robbed of the privilege secured to every citizen by the constitutional declaration that "in all criminal prosecutions the accused . . . . cannot be compelled to give evidence against himself."

The literature of the law contained in our reports, federal and state, is exceeding rich in discussions by eminent jurists covering almost every conceivable case in which this general constitutional privilege could require judicial interpretation. Professor Wigmore, in the fourth volume of his work on Evidence, has given us a complete history of the origin, rise and development of the doctrine.    But the solution of the question before us does not in our judgment take us so far afield. In turning to a more particular examination of that question we may, we think, quote with profit one general proposition announced by the author last named as resting both on reason and authority, viz.: "In preserving the privilege, however, we must resolve not to give it more than its due significance. We are to respect it rationally for its merits, not worship it blindly as a fetish."

There is no law, natural, civil or moral, which forbids to a criminal the right to divulge his guilty secret, and thus perhaps best begin the work of his own reformation.    But out of our knowledge that innocent men are sometimes accused, and our conception of the dignity and self-respect which ought to characterize the conduct of the government of a great people, even in the detection and punishment of crime, have been born the principle that one accused must not be compelled to help in bringing about his own conviction.    The constitution then confers upon every citizen the personal privilege of remaining silent whenever it reasonably appears that his testimony or declaration might result in self-incrimination.

"The privilege is merely an option of refusal, not a prohibition of inquiry:" Wigmore, sec. 2268.   If a privilege, it may be asserted or waived at the choice of him who possesses it. If asserted, it must be when the time has arrived, when the conditions are present that make the exercise of the privilege reasonably necessary to secure the protection intended to be conferred.   And of these matters the witness is not the only and final judge.   "The relator was not the final arbiter of the question whether his answers to the interrogatories propounded would tend to criminate him.   It was the plain duty of the trial judge to decide that question. . . .   The trial judge, and not the witness, is therefore the proper person to decide such questions:" Commonwealth v. Bell, 145 Pa. 374. The general rule was thus formulated by Chief Justice Cockburn in R. v. Boyes, 1 B. & S. 311: "To entitle a party called as a witness to the privilege of silence the court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer; although if the fact of the witness being in danger be once made to appear, great latitude should be allowed to him in judging for himself of the effect of any particular question."   This, in no substantial way, differs from the statement of the same rule declared by Chief Justice Marshall in Burr's trial, and it has since been so generally adopted that it may now be said to be as universal as the privilege, the nature and scope of which it defines.

Manifestly, then, no possible infringement of the privilege can be predicated of the facts that one is summoned to appear as a witness before a lawful tribunal and examined upon oath. There is no room yet for any assumption by such person that his constitutional privilege will be impaired or denied.   It is not the object of the privilege to exempt any citizen, not a defendant, from the obligation to appear as a witness when duly summoned, and the only purpose and effect of the subpoena are to enforce the performance of this duty and procure the desired attendance.

The offer next asserts the fact that the grand jury, before

whom the defendant appeared during the general investigation in which that body was engaged, was the same grand jury which later found a true bill against him. From this fact the learned counsel for appellant draws the legal conclusion which he thus states: "Appellant contends that a person who has testified before a grand jury cannot be indicted before the same grand jury." Cross-prosecutions are familiar features of the ordinary business of our courts of quarter sessions. They usually arise concerning the same transaction. In one case A is prosecuting witness and B the defendant, in the other the positions are reversed. As prosecuting witnesses, both A and B are compelled by the subpœna of the commonwealth to be in attendance. It is usual for each of them, in his character of prosecuting witness, to appear before the grand jury.. If the proposition just quoted were sound, that grand jury, having heard both of them as witnesses, could indict neither. We know of neither reason or authority that would fairly support such a contention, and we must therefore regard it as untenable. The grand jury was conducting a general investigation covering a wide range of subjects. The defendant, although a witness before that body, may have testified as to one or more of many things in no way connected with the question of his own guilt or innocence of the offense charged in the indictment. Or he may have testified that he had no knowledge of any of the matters then before the grand jury, and thus his testimony would have been entirely valueless for any purpose. To say, that because a grand jury in such an investigation examined a witness, such person could not thereafter be indicted even upon the most satisfactory proof of guilt from sources outside himself, would be to limit and restrain the power and usefulness of a grand jury, at the instance of a defendant, who can show no constitutional or other right in himself to demand such an exercise of judicial power.

But a single additional fact is contained in the offer, viz.: "And further that the examination of the defendant when he appeared before the grand jury was confined to the circumstances involving the charge upon which this indictment is founded." From this carefully guarded and somewhat ob-

scure statement as to the character of the testimony elicited from the witness before the grand jury, we are asked to draw the inference that such testimony was in some degree self-criminating. The entire argument of the appellant on the subject of his constitutional privilege seems to us to rest solely upon this inference, which at the best is an extremely remote and doubtful one. If in point of fact the defendant gave no self-criminating testimony before the grand jury, then the whole argument on this branch of the case is without a foundation upon which it can rest. If he did give such testimony, and now seeks to build upon that fact a barrier to shield him from indictment by the tribunal that heard the testimony, why does he not assert the fact? As already stated, his motion to quash rests upon alleged facts dehors the record. As to the character of the testimony he gave, it is his right to be silent if he choose to remain so, but it seems anomalous to say that he may predicate immunity from indictment by the grand jury on a fact, the existence of which he is unwilling to assert. It was open to him, as it was to the defendant, in the case of Com. v. Green, 126 Pa. 531, to call a grand juror to prove, if he could, that he had asserted his constitutional privilege at a time when its assertion was proper and should have been effective, and that the protection secured to him by the constitution was denied. Or if it be his theory that the investigation, during which he testified, was of such a character that he could not claim the privilege of withholding his testimony, and that his protection then rested on the other constitutional provision that such testimony could not thereafter be rightfully used against him, again the burden was on him to furnish proof of the crucial fact.

Further, the inference we are asked to draw not only finds no support in the record of the grand jury, but is practically contradicted by that record. The presentment of the grand jury declares in substance at least, if not in so many words, that the testimony, which in their judgment called for the indictment of this defendant, was that of Ramsey and Vilsack, the bank officers, because they gave to the district attorney the names of these two witnesses as those whose testimony

would support the indictment he was invited to prepare. When the bill went up it contained but the names of these two witnesses, and the return of a true bill, under these circumstances, is again a practical declaration by the grand jury that the bill was found upon their testimony. On what theory shall we infer that it was not so found, especially in the light of what the record now exhibits, viz.: that this testimony was not only sufficient to warrant the indictment, but was actually found to be potent enough to secure the conviction of the defendant on his trial.

The record further shows that the presentment against one Charles Stewart, a member of select council, was rested on some of the same circumstances out of which grew the indictment of this defendant. Why should we undertake to assume that the testimony of the defendant before the grand jury, even if "confined to the circumstances involving the charge upon which this indictment is founded," was not directed towards a discovery of the connection of that municipal officer with the transaction then the subject of investigation? In Com. v. Mosier, 135 Pa. 221, Mr. Justice PAXSON said: "The second assignment alleges that the court below erred in refusing to quash the indictment because the wife of the defendant was examined before the grand jury as a witness, and testified against her husband contrary to law. It nowhere appears that she testified against her husband contrary to law. The defendant was indicted for the crime of adultery. The Act of May 23, 1887, P. L. 158, expressly authorizes the wife to testify to the marriage, upon a charge of adultery against the husband. We have nothing here but the indorsement of the wife's name as a witness on the back of the bill of indictment; and, in the absence of any information as to what she testified to, we must presume she was examined only as to matters to which she was a competent witness."

So we say here. The fair presumptions that flow from the record, as it existed at the time the motion to quash was made, point to the conclusion that this defendant was deprived of no constitutional right. It was his right to place upon the record, if he could, the facts which would properly raise the conclu-

sion he now asks us to reach. We are satisfied he has not done this, and therefore, even if we assume that due proof had been made of every fact contained in his offer, we would still be unable to find a legal reason that would have necessarily compelled the learned judge below to quash the bill, or would warrant us in reversing this judgment because he refused to do so.

The view we have thus taken renders it unnecessary to discuss several interesting phases of the question carefully argued in the able briefs submitted or to attempt to review and analyze many cases therein cited. As we have stated, from the moment the bill was returned by the grand jury to that when sentence was pronounced, we have a record singularly free from even the allegation of substantial trial errors. The main claim of the appellant is that in the fact that the grand jury—at a time when no indictment was pending, and when that body was engaged in a general investigation of the manner in which the municipal business of a great city had been conducted,—called him as a witness along with fifty-two other citizens, and then subsequently, on abundant testimony from sources outside himself, presented him for indictment and found a true bill against him, there is wrapped up the legal conclusion that he was deprived of his constitutional privilege. When we come to measure his claim by the rule of the practical, the substantial and the tangible, it seems to elude our grasp. To the writer it appears to be rather an appeal to the hypercritical eye of the casuist than to that broad sense of justice which ought to keep the judicial mind alert to see that no man, accused of or tried for crime, is deprived of any substantial right secured to him by the constitution and laws of the commonwealth.

After the jury had retired and begun to deliberate upon their verdict they sent to the trial judge a request for further instruction or information. The jury was brought back to the court room and the learned trial judge then read aloud their note of inquiry. This seemed to indicate to him that there was an impression in the minds of the jury, or some of them, that there was no testimony of any direct payment of money.

to Bolger, and in such event they inquired if they could lawfully infer the fact of such payment from the circumstances detailed by the witnesses, who were then present, as to where the money was placed, and when it disappeared. The learned trial judge first proceeded to correct what he believed to be a misapprehension of the fact upon the part of the jury and had the stenographer read to them the notes of the testimony tending to show a direct payment to Bolger. He further answered the question contained in the note in the following language: ". . . . I answer that it would be sufficient if the inference was such as to convince you beyond a reasonable doubt that Bolger got the money." The objection made to the supplemental instructions thus given is as follows: "Counsel for defendant object to the court entering upon a review of the testimony before the jury by reading of the notes inasmuch as the recollection of the testimony in this case is entirely for the jury, and such review of it by the court is an improper reopening of the case."

We are unable to see wherein the learned trial judge in any way overstepped the boundaries of judicial propriety in giving such instructions. We know of no precedent in Pennsylvania holding that any reversible error would be committed by a trial judge when, in answer to a request made by the jury, he permits their recollection to be refreshed by reading a portion of the testimony actually delivered on the trial, concerning which some misapprehension had arisen in the minds of the jury. It was upon the evidence as actually delivered that the defendant was to be tried, and we do not deem it necessary to collate the precedents, all of which tend to show that no reversible error can be found in the action of the trial court thus complained of.

The judgment is affirmed and the record is remitted to the court of quarter sessions of Allegheny county with direction that the judgment be fully carried into effect, and to that end it is ordered that the defendant appear in that court and that he be by that court committed to serve and comply with such part of his sentence as had not been performed at the time this appeal was made a supersedeas.