STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MARGARET MOONEY BROWNING, DEFENDANT-APPELLANT.

Argued October 10, 1955—Decided October 24, 1955.

*Mr. Robert N. Wilentz* argued the cause for appellant (*Messrs. Wilentz, Goldman, Spitzer & Sills*, attorneys).

*Mr. Morris Margaretten* argued the cause for respondent (*Mr. Alex Eber*, Middlesex County Prosecutor, attorney).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.   After summoning the defendant and questioning her without advising her of her privilege against self-crimination, a Middlesex County grand jury indicted her for the alleged embezzlement and theft of the proceeds of tax foreclosure sales received by her as an employee of the Collector of Revenue of the City of Perth Amboy.  This appeal, taken with leave of the Appellate Division and certified here on our own motion, is from an order of Judge Kalteissen denying defendant's motion to dismiss the indictment.

No formal criminal charge was outstanding against the defendant when she appeared before the grand jury.  She concedes that in that circumstance, and if the grand jury proceeding was a general inquiry, the fact that she was

subpoenaed to testify and was not warned of her privilege would not be a reason for quashing the indictment, even if at the time she was under suspicion of wrongdoing. Her insistence, however, is that the proceeding was not a general inquiry but a proceeding directed against her in which her appearance was compelled to accomplish her indictment, a setting, she argues, requiring the cancellation of the action of the grand jury, as the privilege then had the effect of preventing her being called at all, or at least of requiring that she be advised of her privilege not to answer criminating questions.

The principles governing the disposition of the issues raised by the defendant are pronounced in our opinion in *State v. Fary*, 19 *N. J.* 431, filed simultaneously with this opinion. A witness summoned to testify before a grand jury does not stand in the status of a defendant in an ordinary criminal trial who may not be required to take the witness stand at all. *N. J. S.* 2*A*:81–8; *State v. Edelman*, 19 *N. J. Super*. 350, 357 (*App. Div.* 1952). The privilege against self-crimination of the grand jury witness, even a witness under formal criminal charges at the time, does not include the right not to be subpoenaed or sworn. The ordinary rule applies that the occasion for assertion of the privilege by a mere witness does not arise until a question designed to elicit a criminating fact is put. *Vineland v. Maretti*, 93 *N. J. Eq.* 513, 521 (*Ch.* 1922). And, the privilege being personal to the witness, a failure to warn him of his option to refuse to answer criminating questions has a bearing on the validity of the action of the grand jury in indicting him only if he is under formal criminal charges at the time and is questioned as to the charges, or, though not under a formal charge, if the grand jury proceeding was not a general inquiry but one directed at the witness with the purpose of fixing a criminal charge on him. *State v. Fary, supra*.

The defendants in the *Fary* case were likewise not under formal criminal charges when they testified before the grand jury. The proceeding there was found to be a general inquiry; this court held that the defendants had not met

their burden to show unmistakably that it was a proceeding directed at securing their indictment. We also noted that the indictments might well have been based upon the testimony of other witnesses who appeared before the grand jury.

The record in the instant case is, if anything, more strongly adverse to this defendant's contention. The proceeding was initiated by Assignment Judge Smalley when he charged the incoming May term grand jury on May 4, 1953. He specially directed the jury's attention to "a situation * * * relating to the shortage of funds arising out of,—and certain other allied matters,—the sale of tax foreclosed property in the City of Perth Amboy." Thereafter the grand jury held a number of sessions, in May, June and the following September, at which 32 witnesses testified, including auditors, present and former city commissioners, every employee, including the defendant, of the tax collector's office, purchasers of the foreclosed properties, bank officers, and a representative of the State Division of Local Government. The inquiry concluded with the filing of a lengthy presentment reporting that, while the grand jury was concerned "in part" with "determining whether or not a crime was committed, the nature of the crime and by whom committed" and had "returned an indictment" (that against the defendant), "By reason of a five year limitation of the statute relating to embezzlement by public officers and employees, the Grand Jury could not return an indictment charging offenses committed prior to the summer of 1948." The balance of the presentment, indeed seven-eighths of it, concerns itself, in the presentment's language, "with conditions which made it possible for such a crime to be repeatedly perpetrated and go undetected over the period of several years." Conditions were characterized as "inadequately described as shocking" and to be classified as establishing "official malfeasance and nonfeasance" on the part of officials and employees of the City of Perth Amboy, but, "due to the passage of time such acts may not now be presented." The presentment then goes on to enumerate the conditions found and expresses the hope that "By exposing such wrongdoing we hope to inspire public

confidence in the capacity of the body politic to purge itself of untoward conditions." The presentment closes with six recommendations to correct the conditions found and to prevent the reoccurrence of the circumstances which made possible the disappearance of the funds.

The defendant testified at the fourth session, on June 5, and was followed on the stand on that day and on June 12 by all of the other employees in the tax collector's office. The sales of 24 parcels of foreclosed property were under inquiry and defendant in the first instance apparently received the sale proceeds of all. The indictment of her was handed up on June 26, 1953, after which the proceeding continued until concluded with the filing of the presentment on September 8 following.

Enough has been said to show that the inquiry was plainly the familiar general inquiry into the conduct of public business which is a special province of grand juries in our State. *State v. Fary, supra.* And it is equally plain that defendant's indictment may well have had substantial support in, indeed may have rested entirely upon, the evidence of many of the 31 other witnesses who testified at the inquiry.

Defendant, however, stresses an event which occurred some eight months before the grand jury began the inquiry as establishing that both the prosecutor and the grand jury were bent on securing her indictment and nothing more. The city auditors had reported the shortage in September 1952. The prosecutor and his assistant immediately undertook an investigation. Defendant, as the employee who received the proceeds of the sales, was interrogated for four hours with one short break; each of the 24 sales was dealt with in detail. During the questioning the prosecutor or his assistant told defendant that "there were one or more thieves in the Office" and "that they were trying to find out who they were." It was pointed out "that in practically all the cases where money did not find its way to the Collector the people said they gave the money to her [defendant] and the receipts showed the people had given the money to her." When the questioning was

completed the prosecutor said to the defendant, "You know the whole thing looks pretty black for you."

This event unquestionably establishes that defendant was under strong suspicion of wrongdoing when she was summoned before the grand jury. But, when properly oriented in the whole setting, it falls far short of a showing that the proceeding was directed at securing defendant's indictment, and that only.

Defendant's part in the matter under investigation was incidental to the official malfeasance and misfeasance at higher levels uncovered by the inquiry, and at which the overall proceeding was plainly directed. As the recipient of the monies, defendant was understandably an important link in the chain of events, and her testimony was for that reason vital to the major inquiry being pursued. It was the light which her testimony could throw on the larger picture that explained her being called as a witness, not any preconceived design on the part of either the prosecutor or the grand jury particularly to bring her to book for her alleged crime. She was a first suspect, but her indictment was nonetheless an incident to, and not the reason for nor the object of, the proceeding.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN— 6.

*For reversal*—Justice HEHER—1.