THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. BENJAMIN FARY, HARRY FARY, AND BRUCE VOGEL,
DEFENDANTS-APPELLANTS.

Argued September 12, 1955—Decided October 24, 1955.

See also 16 *N. J.* 317, 108 *A. 2d* 593.

432

Mr. *Edward F. Juska* argued the cause for appellants (*Mr. Juska*, attorney for appellants Fary; *Messrs. Quinn, Doremus, McCue & Russell*, attorneys for appellant Vogel, *Mr. Vincent J. McCue* of counsel).

Mr. *George A. Gray*, Deputy Attorney-General of New Jersey, argued the cause for respondent (*Mr. Vincent P. Keuper*, Monmouth County Prosecutor, of counsel).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. Appellants, Benjamin and Harry Fary, sold gravel to Ocean Township, Monmouth County, on orders placed by appellant, Vogel, the township's road foreman. The Monmouth County grand jury which sat for the January 1953 term indicted the Farys for alleged cheats and frauds in the sale of the road gravel to the township and indicted Vogel for allegedly aiding and abetting them. This appeal, taken with leave of the Appellate Division and certified to this court on its own motion, brings up for review an order of Judge Giordano denying appellants' motion to dismiss the indictments. The single point on the brief is that the indictments are invalid because "the defendants were subpoenaed before the grand jury and, without any notification of their rights as to their privilege against crimination, were required to testify with the end result that the indictments were found against them."

This grand jury was the second to conduct an inquiry into the operations of the township road department, the 1952 May term grand jury having conducted a like investigation without handing up indictments but filing a presentment in sharp criticism of the laxity of "elected Township officials" in supervising purchasing practices. The January 1953 term grand jury reopened the inquiry and its investigation resulted in the handing up of the indictments here under attack, without other action. The three appellants testified before both grand juries without claiming the privilege against self-incrimination before either body.

The privilege of a witness against being compelled to incriminate himself, of ancient origin, is precious to free men as a restraint against high-handed and arrogant inquisitorial practices. 8 *Wigmore, Evidence* (3d ed. 1940), *p.* 276 *et seq.; Corwin,* 29 *Mich. L. Rev.* 1 (1930). It has survived centuries of hot controversy periodically rekindled when there is popular impatience that its protection sometimes allows the guilty to escape. It has endured as a wise and necessary protection of the individual against arbitrary power; the price of occasional failures of justice under its protection

is paid in the larger interest of the general personal security. "The wisdom of the exemption has never been universally assented to since the days of Bentham, many doubt it today, and it is best defended not as an unchangeable principle of universal justice, but a law proved by experience to be expedient." *Twining v. State of New Jersey*, 211 *U. S.* 78, 113, 29 *S. Ct.* 14, 53 *L. Ed.* 97, 112 (1908). Although not written into our State Constitution (as it is in the Fifth Amendment to the Federal Constitution and in the constitutions of all our sister states except Iowa), and not given even statutory expression until it appeared as section 4 of the Evidence Act of 1855, *L.* 1855, *c.* 136, *sec.* 4, *p.* 668, now *N. J. S.* 2A:81–5, the privilege has been firmly established in New Jersey since our beginnings as a State. *State v. Zdanowicz*, 69 *N. J. L.* 619 (*E. & A.* 1903); *State v. Miller*, 71 *N. J. L.* 527 (*E. & A.* 1905); *Fries v. Brugler*, 12 *N. J. L.* 79 (*Sup. Ct.* 1830); *In re Vince*, 2 *N. J.* 443 (1949); *In re Pillo*, 11 *N. J.* 8 (1952).

██ It is a fallacy, however, to regard the right of a witness to remain mute when a criminating fact is inquired about as a fixed barrier to the search of the judicial process for truth. The barrier is up as to any question only when the witness himself chooses to put it up, but the court, and not the witness, is the ultimate arbiter whether the witness is entitled to the protection of the privilege. *In re Pillo, supra.* The witness may not claim the privilege until the question is put, *Vineland v. Maretti*, 93 *N. J. Eq.* 513, 521 (*Ch.* 1922), and if he answers the question without claiming the privilege he irrevocably waives it. *State v. Toscano*, 13 *N. J.* 418, 423 (1953).

█ It is a logical corollary of the personal quality of the privilege that there is no general requirement calling for a warning to the witness, before the question is put, of his option to refuse to answer the question. See *State v. Mohr*, 99 *N. J. L.* 124, 129 (*E. & A.* 1923). The contrary notion lost any support it had over a century ago, *Wigmore, supra, p.* 398, as knowledge of the nature of the privilege and the right to assert it became widespread. Certainly in the present

day it is difficult to believe that there are any witnesses unaware of their privilege after the almost daily publicity and discussion of it which has followed the practice of witnesses who, in the vernacular, "take the Fifth Amendment" before Congressional and state inquiries. Even upon trial, although it is not improper for the judge, of his own motion or on request of counsel, to warn a witness of his privilege when it is believed that justice requires it, it is not error to fail or refuse to do so. *Vineland v. Maretti, supra.*

Should an exception be made, and an indictment be quashed, if, as here, a grand jury conducting an inquiry into public affairs indicts a witness summoned to testify in such inquiry, when he was not warned of his privilege? The affirmative of the proposition argues that our conception of the fair play and self-respect which should attend a great state's administration of criminal justice demands that law enforcement authorities show a scrupulous regard for the rights of those accused of crime, *State v. Borg,* 9 *N. J. Misc.* 59 *(Sup. Ct.* 1931). These are the considerations, related to the privilege, which underlie the provision of *N. J. S.* 2A:81–8 that on the trial of an indictment a defendant shall be admitted to testify only if he offers himself as a witness, *State v. Edelman,* 19 *N. J. Super.* 350, 357 *(App. Div.* 1952), and the provisions of *R. R.* 8:3–3(b) that upon the arraignment of an accused on a criminal complaint the magistrate shall inform him, among other things, "of his right to make a statement not under oath as to the charge against him, that he is not required to make such a statement, and that any statement made by him may be used against him."

▇ Nevertheless, as Federal Judge Medina recently pointed out, in *United States v. Scully,* 225 *F.* 2d 113 (2d *Cir.* 1955), there is serious doubt that the safeguards, stemming from the privilege, surrounding inquiry of a person actually on trial for a crime apply with the same force to the inquisitorial proceedings of a grand jury. It doubtless is not, as it should not be, the practice of our prosecutors and grand juries to summon witnesses whose indictment is contemplated. It must be remembered, however, that a grand jury does not

decide innocence or guilt, may take evidence not ordinarily admissible upon trial, *In re Pillo, supra,* and, in Judge Medina's words, "\* \* \* Its proceedings have never been conducted with the assiduous regard for the preservation of procedural safeguards which normally attends the ultimate trial of the issues." We must add to this the reminder that in New Jersey grand jury inquiries into public affairs have long been recognized as among the most potent and effective safeguards of the public interest. Chief Justice Vanderbilt, in his opinion for this court in *In re Camden County Grand Jury,* 10 *N. J.* 23, 65–66 (1952), speaking of grand jury presentments resulting from such inquiries, said:

"\* \* \* A practice imported here from England three centuries ago as part of the common law and steadily exercised ever since under three successive State Constitutions is too firmly entrenched in our jurisprudence to yield to fancied evils. If presentments of matters of public concern were found necessary in the public interest in the relatively simple conditions of English and colonial life three centuries ago, how much more essential are they in these days when government at all levels has taken on a complexity of organization and of operation that defies the best intentions of the citizen to know and understand it. What is not known and understood is likely to be distrusted. What cannot be investigated in a republic is likely to be feared. The maintenance of popular confidence in government requires that there be some body of laymen which may investigate any instances of public wrongdoing. \* \* \*

\* \* \* The grand jury provides a readily available group of representative citizens of the county empowered, as occasion may demand, to voice the conscience of the community. There are many official acts and omissions that fall short of criminal misconduct and yet are not in the public interest. It is very much to the public advantage that such conduct be revealed in an effective, official way. No community desires to live a hairbreadth above the criminal level, which might well be the case if there were no official organ of public protest. Such presentments are a great deterrent to official wrongdoing. By exposing wrongdoing, moreover, such presentments inspire public confidence in the capacity of the body politic to purge itself of untoward conditions."

██ Decisions outside our State apparently agree that a failure to warn the witness of his right to assert the privilege is fatal to an indictment if the grand jury indicts the witness after questioning him about specific criminal charges made

against him in a formal way, as by a criminal complaint. *State v. Corteau,* 198 *Minn.* 433, 270 *N. W.* 144 (*Sup. Ct.* 1936); *People v. Cochran,* 313 *Ill.* 508, 145 *N. E.* 207 (*Sup. Ct.* 1924); *Taylor v. Commonwealth,* 274 *Ky.* 51, 118 *S. W.* 2d 140 (*Ct. App.* 1938); *Culbreath v. State,* 22 *Ala. App.* 143, 113 *So.* 465 (*Ct. App.* 1927); *Annotation, Self-incrimination before Grand Jury,* 38 *A. L. R.* 2d 225, 289 (1954); 29 *Iowa L. Rev.* 373 (1944); 49 *Yale L. J.* 1059 (1940). The same result is reached even as to a witness not under formal criminal charges if it is made unmistakably to appear that the grand jury was actually conducting an investigation directed against the witness and summoned him to testify with the purpose of getting evidence to fix a criminal charge on him. The rationale of these decisions is that where the investigation is in fact a proceeding against the witness, or being ostensibly a general investigation is, in fact, as shown by the circumstances and evidence, a proceeding against him, then there is a gross encroachment upon the witness' privilege if he be subpoenaed before the body, sworn and questioned, though he makes no claim of the privilege. *People v. Bermel,* 71 *Misc.* 356, 128 *N. Y. S.* 524 (1911); see also cases annotated at 38 *A. L. R.* 2d, *supra,* p. 290–295. Chief Justice Case implied, in *State v. Grundy,* 136 *N. J. L.* 96, 98 (*Sup. Ct.* 1947), that the burden of the indicted witness is to show that "there was a ruse by which it was sought to induce [the witness], unwittingly, to give evidence against himself." Any doubt in that regard, under the prevailing view, is resolved in favor of the validity of the indictment and the treatment of the indicted witness as merely an ordinary witness who waived the privilege by not claiming it. 29 *Iowa L. Rev., supra, p.* 376.

Where, therefore, the inquiry is in fact a general investigation not aimed at the witness and the witness fails to claim the privilege, his testimony may be used against him, or even be the basis of an indictment. *People v. Bermel, supra.* And in such case the mere possibility when he is called that the witness may later be indicted furnishes no basis for requiring that he be advised of his privilege

when summoned to give testimony before the grand jury. *United States v. Scully supra.* The interesting question of the effect, during a general investigation, of interrogation, without warning, of a witness under formal criminal charges where other witnesses also testify to facts incriminating him, is not considered in the cited cases, and we have no occasion to pass upon the question here. For our purposes in this case it is enough to note that the indictment, for bribery, of a witness, not under formal criminal charges, by a grand jury engaged in a general inquiry into the subject of bribery of members of a city council was held not to be invalid merely because his examination before the grand jury was confined to the circumstances involving the charge upon which the indictment was founded, *Commonwealth v. Bolger,* 229 *Pa.* 597, 79 *A.* 113 (*Sup. Ct.* 1911), this because it appeared that there was testimony from other witnesses implicating the witness. The court said:

"To say that, because a grand jury in such an investigation [a general inquiry] examined a witness, such person could not thereafter be indicted even upon the most satisfactory proof of guilt from sources outside himself, would be to limit and restrain the power and usefulness of a grand jury, at the instance of a defendant, who can show no constitutional or other right in himself to demand such an exercise of judicial powers."

From what appears in the record before us, the grand jury which indicted appellants was conducting a general inquiry, of familiar form, into the conduct of the Ocean Township Road Department. The subpoenas were expressly so captioned. The appellants were not under formal criminal charges when they testified. The strongest case that can be made for their position is that they were at the time under suspicion of wrongdoing. The authorities cited establish that, of itself, this would not be sufficient reason for invalidating their indictment because they were not warned. In addition, while the complete list of the witnesses who testified at the inquiry is not in the record, it is strongly implied on appellants' brief that other witnesses did testify and the parties' stipulation identifies one, Benjamin Fary's

daughter, who testified from the Fary books. Not only, then, does the record show a general inquiry by the grand jury, but the prospect cannot be ruled out that the indictments may well have been founded on evidence obtained from other witnesses. The grand jury's investigation was an inquiry undertaken, not to connect the appellants with a particular offense, but for the common purpose of such general inquiries, to discover whether there was anything criminally or otherwise irregular about the operations of the township road department and, if so, who were the responsible parties. The fact that the appellants were intimately identified with the operations under investigation made them logical witnesses to give evidence and if their disclosed participation in any violations of law uncovered by the inquiry warranted their indictment, the grand jury's action is not to be stricken down merely because they were not warned of their privilege. Such general grand jury investigations are essential in the public interest and it would greatly limit if not destroy their utility if every witness questioned during their course were to be immune from prosecution. See 49 *Yale L. J., supra, p.* 1072.

One last observation is pertinent. We have noted that the general rule is that the privilege is irrevocably waived if the question is answered without claiming the privilege. Here the appellants did not claim the privilege when testifying before the first grand jury, and it is not suggested that different questions were asked at the second inquest. In that circumstance, a waiver barring their right to assert the privilege at the second inquiry may be constructed. 49 *Yale L. J., supra, p.* 1066.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice HEHER—1.