96 N.J. Super. 501 (1967)
233 A.2d 406
STATE OF NEW JERSEY, PLAINTIFF,
v.
C. ROBERT SARCONE, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 28, 1967.
*503 Mr. Thomas P. Ford, Jr., First Assistant Prosecutor argued the cause for plaintiff (Mr. Brendan T. Byrne, Prosecutor, Essex County).
Mr. Justin P. Walder, attorney, argued the cause for defendant.
FUSCO, J.S.C.
This case comes before me on a motion by defendant, C. Robert Sarcone, to dismiss the two indictments returned against him on the grounds that they are without foundation and have been unlawfully and illegally obtained, in violation of his constitutional rights pursuant to the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Paragraph 1 of the New Jersey Constitution and the provisions of N.J.S. 2A:84A-17 et seq.
C. Robert Sarcone was subpoenaed at about ten A.M. on June 12, 1967, to appear and testify before the Grand Jury of Essex County that day at eleven A.M. to give evidence on behalf of the State. The name of the case in which he was allegedly to give evidence was left blank. Sarcone appears to have been the first witness before the Grand Jury.
There has been received in evidence a subpoena directed to one Greta Brickell, "the secretary or clerk or person in charge of records of the Belleville A.B.C. Board," requiring *504 her to appear on June 13, 1967, at 9:30 A.M. This is marked a subpoena duces tecum and indicates she is "to give evidence in behalf of said State" and "bring any and all records, reports, notes, documents or memoranda pertaining to a tavern known as the Varsity Club, 35 William Street, Belleville, N.J. more particularly, but not limited to any and all papers dealing with a charge or complaint or allegation against said tavern that alcoholic beverages were sold to a minor some time during 1967."
Mr. Sarcone appeared on that date and also on June 21st and June 22nd, 1967. On June 22nd, 1967, following the last appearance of the defendant, the Grand Jury returned two indictments against C. Robert Sarcone and Arthur Rosania. Indictment No. 2086-66 charged both defendants with committing the crime of conspiracy (agreeing to accept a bribe of $1,200). Indictment No. 2087-66 in the first count charged Arthur Rosania with the crime of attempting to solicit an undue reward for performing public duties and C. Robert Sarcone with the crime of aiding and abetting Arthur Rosania in the attempted extortion. The second count charged Arthur Rosania with the crime of soliciting an undue reward and C. Robert Sarcone with the crime of aiding and abetting Arthur Rosania in committing the crime of soliciting an undue reward.
The assistant prosecutor who examined the defendant before the Grand Jury neither advised him of his privilege to refuse to answer questions that might tend to incriminate him, U.S. Const. Amend. V; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), N.J.S. 2A:84A-17 and 19, nor informed him of the nature or the subject matter of the Grand Jury investigation.
The issue presented is whether the failure of the prosecutor to advise the defendant Sarcone of his rights under the United States Constitution and the Evidence Act of this State is fatal to the indictments.
A witness has a right in a Grand Jury investigation to claim the privilege against self-incrimination. The witness *505 may not claim the privilege against self-incrimination until he is asked the incriminating question. If he answers the question without claiming the privilege, he irrevocably waives it. State v. Fary, 19 N.J. 431, 435 (1955). There is no general requirement of warning the witness of the privilege to refuse to answer incriminating questions.
However, our State recognizes that the failure to warn the witness of his right to assert the privilege is fatal to an indictment if the Grand Jury indicts the witness after questioning him about specific criminal charges made against him in a formal way or it clearly appears that the Grand Jury was actually conducting an investigation directed against the witness and summoned him to testify with the purpose of getting evidence to fix a criminal charge upon him. State v. Fary, 19 N.J. 431, 437-438 (1955); State v. Browning, 19 N.J. 424, 427 (1955); State v. Sibilia, 88 N.J. Super. 546, 548 (Cty. Ct. 1965).
Justice Brennan stated in Fary that,
"Decisions outside our State apparently agree that a failure to warn the witness of his right to assert the privilege is fatal to an indictment if the grand jury indicts the witness after questioning him about specific criminal charges made against him in a formal way, as by a criminal complaint (cases omitted). The same result is reached even as to a witness not under formal criminal charges if it is made unmistakably to appear that the grand jury was actually conducting an investigation directed against the witness and summoned him to testify with the purpose of getting evidence to fix a criminal charge on him. The rationale of these decisions is that where the investigation is in fact a proceeding against the witness, or being ostensibly a general investigation is, in fact, as shown by the circumstances and evidence, a proceeding against him, then there is a gross encroachment upon the witness' privilege if he be subpoenaed before the body, sworn and questioned, though he makes no claim of the privilege (cases omitted)." (19 N.J., at pp. 437-438)
The defendant contends that the investigation was not general but directed at him and two others, that he was neither advised of his constitutional rights nor apprised of the nature of the subject matter of the investigation and that he was not requested or offered the opportunity to execute *506 a waiver of his right or privilege. In the alternative, the defendant argues that even if the Court decides that he had knowledge of his constitutional rights or that he waived such rights, the act of subpoenaing him as a witness when he was a prospective defendant before the Grand Jury is unconstitutional under the Fifth and Fourteenth Amendments of the United States Constitution.
The State, in the alternative, contends that the defendant knew of his rights, the subpoenaing of the defendant was not a ruse to procure evidence from him to support an indictment, there is other evidence to support the indictments, and the defendant did not incriminate himself. Additionally, the State contends that the act of subpoenaing the defendant, even assuming that he was a prospective defendant, is not unconstitutional.
No formal charge was pending against the defendant at the time he appeared before the Grand Jury. However, information had come to the prosecutor's attention that a conspiracy to bribe certain officials might have occurred and that C. Robert Sarcone was probably one of the conspirators. Indictment No. 2086-66 at Paragraph 12 reads,
"On or about the 7th day of June, 1967, Samuel Stellatella, after having revealed what had transpired to date in confidence to the county prosecutor of Essex County, conferred again with Arthur Rosania when Rosania called him. Stellatella informed Rosania that he had obtained the money and that it would be in his (Stellatella's) hands by the following Monday, June 12, 1967. Rosania told Stellatella to contact C. Robert Sarcone to inform him that the money had been obtained."
Therefore, it cannot be suggested that the subject matter of the Grand Jury investigation was general in scope. The investigation was devoted to an inquiry into a particular transaction; the defendant was a target for the indictment. Certainly, Paragraph 12 in Indictment No. 2086-66 supports this conclusion as does the subpoena directed to Greta Brickell, heretofore referred to.
*507 Furthermore, the prosecutor demonstrated his intention to charge the defendant with the commission of a crime or crimes at the time he summoned the defendant to appear. The prosecutor, after propounding numerous questions to the defendant and playing tapes of an alleged conversation between the defendant and others, stated:
"Q. Now, let me explain to you the reason why this happened, the way it was. You know from sitting in this chair that we don't present stores (sic) of anyone who might be a potential defendant, the reason that you were called here is to see if there was some rational explanation, to see what appears on the tapes, and these tapes you have heard them. You can understand as a lawyer these are not particularly attractive tapes."
This language permits only one conclusion. The prosecutor stated that the purpose in summoning the defendant to appear before the Grand Jury was "to see if there was some rational explanation." Obviously, at the time the prosecutor summoned the defendant, he must have contemplated that he would seek a criminal charge against him and that he would elicit further evidence from the mouth of the defendant. The prosecutor would not have summoned the defendant to explain or identify tapes unless he intended to subsequently obtain an indictment. The prosecutor knew that the investigation was directed against this defendant and one or two others. Under these circumstances the failure of the State to advise the defendant of his right to refuse to answer incriminating questions would vitiate the indictments subsequently returned. State v. Fary, supra; State v. Sibilia, supra.
The State contends that since the defendant is a member of the Bar, a former Deputy Attorney General, a former assistant prosecutor, a former legislator and a member of the recent constitutional convention (all of which the Court may take judicial notice) he knew of his rights and therefore it was not necessary to advise him of the privilege against self-incrimination. In this regard I am in accord, although *508 cognizant of the saying that "He who represents himself has a fool for a client."
The following colloquy before the Grand Jury supports the conclusion that the defendant knew of his rights.
"C. ROBERT SARCONE, sworn.
EXAMINATION BY MR. McGLYNN:
Q. Would you tell us your full name, please.
A. C. Robert Sarcone.
Q. Mr. Sarcone, you live here in Newark?
A. 365 Highland Avenue.
Q. You are an attorney at law of the State of New Jersey?
A. Admitted to the Bar in the year 1950 as an attorney; 1953 as a counsellor.
Q. You have offices for the practice of law where?
A. 744 Broad Street, Newark.
Q. Now, as a lawyer, you know you are a lawyer, and I am a lawyer, and I needn't advise you of whatever rights you have before this body. I am sure you understand those, is that correct?
A. I hope I do, yes.
Q. If there is any question in your mind, I will be glad to answer them if I can about your rights.
A. No."
The above colloquy is self-explanatory. The testimony demonstrates that the defendant was aware of his constitutional rights. He unequivocally answered in the affirmative when the prosecutor inquired if he understood those rights. He also unequivocally answered in the negative when the prosecutor asked him if he had any question about those rights.
Perhaps the defendant was not, in so many words, advised specifically of all his rights. However, to do so would have been unnecessary in the unusual circumstances here, where the defendant stated that he understood those rights and that he had no question pertaining to them. If the defendant in the instant case did not know of his rights, then no one does.
Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) and Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) are inapplicable *509 to the instant case, as indicated by the prosecutor. Spevack may be distinguished because in that case Klein, an attorney, was disbarred for refusing to answer questions and to produce records in a disciplinary proceeding; the Supreme Court held that an attorney cannot be punished for invoking the Fifth Amendment privilege. Similarly, in Garrity the court held that a state cannot condition the exercise of the Fifth Amendment privilege by such means as threatening one with loss of employment for his refusal to testify. In the present case the issue is not whether the defendant had the right to assert the privilege against self-incrimination but whether he was effectively apprised of his right to refuse to answer an incriminating question. The prosecutor concedes that if the investigation was directed toward a prospective defendant, then such defendant has the right to refuse to answer incriminating questions.
However, although the defendant Sarcone knew of his rights, he could not be expected to utilize and understand his privilege against self-incrimination without initially being apprised of the subject matter of the inquiry. Since the defendant did not know that he was a prospective defendant or the target of the investigation, he could not intelligently discern between those questions that might tend to incriminate him and those which he should answer.
It is clear from the United States Supreme Court's decision in Miranda v. State of Arizona, 384 U.S., 86 S.Ct. 1062, 16 L.Ed.2d 694, 436 (1966) that in addition to the requirement of warning an accused of the right to remain silent, he must be warned that anything he says can be used against him. Only in this way can the person understand the consequences of failing to assert the privilege. Since the defendant did not know of the subject matter of the Grand Jury's investigation, he could not understand the consequences of failing to claim the privilege against self-incrimination.
The Fifth Amendment privilege is so fundamental to our accusatorial system of law that no meaningful distinction *510 with reference to this right exists between police interrogation and a Grand Jury interrogation by an assistant prosecutor. In fact, a Grand Jury interrogation is a secret, ex parte inquisition wherein a prosecutor actively participates and to a large extent controls the proceeding. Counsel, indeed, is not permitted and the compelling atmosphere is similar to the nature of a custody interrogation, although in an incustody interrogation today counsel may be permitted if requested by the witness. Therefore, to compensate for the unilateral nature of a Grand Jury proceeding, it is necessary to safeguard the rights of a prospective defendant by requiring the prosecutor to apprise the witness of his constitutional rights and the subject matter of the investigation.
To show that the defendant knew about the nature of the inquiry, the prosecutor refers to the fact that Sarcone expressed appreciation to the Grand Jury for the privilege of having been called before it. However, these ex post facto statements which appear in the transcript of June 22, 1967, are not determinative. The harm was done at the outset, after Sarcone started to testify on the very first day following his having been subpoenaed. As I indicated during the course of the oral argument, what else could he do once he realized that he may be indicted? Naturally, he had to be gracious, cooperative and try to exculpate himself.
Even if the Court were to conclude that the defendant was apprised of his constitutional rights and the subject matter of the Grand Jury investigation, there may be a compelling constitutional reason to consider dismissing the indictments against the defendant.
In Jones v. United States, 119 U.S. App. D.C. 284, 342 F.2d 863 (D.C. Cir. 1964), the defendant Short, following police interrogation and arraignment some fifteen days later, was taken before a Grand Jury and questioned. He was allegedly advised of his rights and thereafter questioned regarding the offenses. He was subsequently indicted and convicted at trial.
*511 In reversing the convictions and remanding for additional hearing, Judge Edgerton stated that,
"Mere interrogation before a grand jury may harm the accused as much as mere interrogation at a trial. Even if he makes `no direct incriminating statement, there is no way to know whether in fact his appearance was incriminating in the minds of some or all the members of the Grand Jury.'" (cases omitted)
"His having been brought there may arouse suspicion. His manner and voice may arouse suspicion. Because grand jury investigations are secret * * * he is isolated from the protection of counsel and presiding judge and insulated from the critical observation of the public.' Though he may be unqualified, as Short was, to decide for himself what questions to answer, he must decide at his peril. If he answers incriminating questions he may make it certain, as Short did, that he will be indicted * * * if he refuses to testify at all, or to answer some questions on the ground that answers might incriminate him, the grand jury may draw conclusions. If he refuses to answer questions that are not incriminating, he may be guilty of contempt." (at p. 868)
In People v. Laino, 10 N.Y.2d 161, 218 N.Y.S.2d 647, 176 N.E.2d 571 (Ct. App. 1961) certiorari denied 374 U.S. 104, 83 S.Ct. 1687, 10 L.Ed.2d 1027 (1963), the Court made it clear that if a person is subpoenaed to testify before a Grand Jury and he is a prospective defendant or the target of that body's investigation, any indictment returned against the individual shall be dismissed. At page 655 of 218 N.Y.S.2d, at page 577 of 176 N.E.2d the Court concludes that
"In such a case the subpoena is deemed to be a form of compulsion, and the testimony thus compelled may not be used against the defendant as the basis of an indictment, or for any other purpose."
Although the defendant was warned of his right against self-incrimination in Laino, he failed to assert the privilege and answered incriminating questions.
Our own Supreme Court in State v. Fary, supra, forwarned prosecutors with reference to the conduct that occurred in this case by stating,
*512 "It doubtless is not, as it should not be, the practice of our prosecutors and grand juries to summon witnesses whose indictment is contemplated."
While I recognize that this position, i.e., the subpoenaing of a prospective defendant before a Grand Jury is unconstitutional, may not be in the majority throughout the country, as the New York Court of Appeals said in a different connection,
"We may as well disregard the overwhelming weight of authority elsewhere, and start with a rule of our own, consistent with practical experience. * * * Consistency requires us to go forward or to go back. We cannot go back * * *. The present distinction is indefensible."
Campbell v. New York Evening Post, 245 N.Y. 320, 157 N.E. 153, 52 A.L.R. 1432 (Ct. App. 1927).
Once the defendant was under a subpoena and required to testify, he had the personal privilege to assert the Fifth Amendment and refuse to answer incriminating questions. But had the defendant claimed the privilege, he probably would have prejudiced himself in the eyes of the Grand Jury to the extent that that body might have concluded that the defendant's failure or unwillingness to answer incriminating questions gives rise to probable cause that the defendant may be guilty of the offense for which he was later indicted. Unlike the jury in a criminal case, the Grand Jury is not required to be instructed at the request of counsel and in the discretion of the trial judge that a claim of privilege is not to be used as evidence against the defendant. N.J.S. 2A:84A-31. The charge to the Grand Jury neither instructs the Grand Jurors of the witness' privilege to refuse to answer incriminating questions nor guides them in determining what weight, if any, should be given to a witness' refusal to answer such incriminating questions. Furthermore, unlike the defendant at a criminal trial, a prospective defendant, at a Grand Jury investigation *513 is required to take the stand in the first instance. N.J.S. 2A:84A-17(1).
The line between a defendant in a criminal trial and a prospective defendant or one the target of an indictment in a Grand Jury proceeding is thin. No meaningful distinction can be drawn between the two classes. Of course, the Grand Jury does not decide the guilt or innocence of an accused but certainly this function does not override one's right to constitutional safeguards. The Grand Jury investigation is as critical to a prospective defendant in our accusatorial system of law as the custodial interrogation stage which often precedes a Grand Jury investigation.
Therefore, to afford the fullest measure of constitutional safeguards to a prospective defendant or one the target of an indictment in a Grand Jury proceeding, an indictment returned against such witness based on information obtained from his testimony must be dismissed, unless the witness signs a waiver of immunity before voluntarily appearing at the investigation, the scope of which is made known to him.
The State counters this by alleging that even if the defendant's constitutional rights were impaired, there is sufficient testimony from other witnesses to support the indictments and that the defendant did not give any evidence that might tend to incriminate him.
The testimony of all witnesses has not been made available to the defendant's counsel. The Court in order to avoid compromising the State's case has only considered the testimony of Sarcone and Rosania as well as the tapes attached. In fact, Rule 41 of the Evidence Act of this State provides that upon an inquiry into the validity of an indictment, no evidence shall be received to show the effect of testimony on the mind of a juror.
Even if it had been considered, it would have been difficult for the Court to determine what motivated the Grand Jury. The actions of a deliberative body are difficult to fathom. As indicated in charges to trial juries, the determination of facts must come not only from the evidence *514 produced or from the lack of evidence but also from the demeanor of the witnesses and their interest in the outcome. In this case it may not have been the spoken word of the defendant but rather his demeanor which may have had at incriminating quality that ultimately resulted in the Grand Jury indictments. As to whether the Grand Jury would have returned the indictments against the defendant solely on other testimony which was adduced is purely speculative. State v. Sibilia, supra. In this speculation the Court cannot indulge, particularly since any disposition which this Court may make on this motion will not be dispositive of the case nor will it bar further prosecution.
As was noted in People v. Bermel, 71 Misc. 356, 128 N.Y.S. 524, 528 (Sup. Ct. 1911),
"It does not do to call a defendant before the grand jury and cross-examine him, then later call other witnesses, and base an indictment solely upon the testimony of the other witnesses, claiming that the illegal examination of the defendant can be disregarded and ignored or wiped out of the record. Such a procedure would open a very wide door for abuse and oppression. * * *"
The statute of limitations has not run. The State's witnesses are still available to the prosecutor, nothing to the contrary having been indicated on the argument of the motion. The prosecutor may present such untainted testimony available to him to a new Grand Jury for its action. The Motion to Dismiss the indictments is granted.