214 N.J. Super. 269 (1986)
518 A.2d 1116
SIDNEY GREENBLATT AND STILES PHARMACY, INC., PLAINTIFFS-RESPONDENTS/CROSS-APPELLANTS,
v.
THE NEW JERSEY BOARD OF PHARMACY, DEFENDANT-APPELLANT/CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 26, 1986.
Decided December 15, 1986.
*270 Before Judges FURMAN, DREIER and SHEBELL.
W. Cary Edwards, Attorney General, attorney for appellant/cross-respondent (Andrea M. Silkowitz, Deputy Attorney General, of counsel; Sandra Y. Dick, Deputy Attorney General, on the briefs).
Myers, Matteo, Rabil, Pluese & Norcross, attorneys for respondents/cross-appellants (Marie E. Lihotz, on the briefs).
*271 Wilentz, Goldman & Spitzer filed amicus curiae letter brief on behalf of the New Jersey Pharmaceutical Association (Gordon J. Golum, of counsel; Peter C. Visceglia, on the letter brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
The New Jersey Board of Pharmacy appeals from a Law Division order quashing a subpoena by which it sought to obtain prescriptions and patient records in connection with its investigation of improper practices by plaintiffs, Sidney Greenblatt and Stiles Pharmacy, Inc. Plaintiffs have cross-appealed from that portion of the decision upholding the constitutionality of the challenged statutes.
On November 28, 1983 the Attorney General, on behalf of the Board of Pharmacy, served a subpoena duces tecum on Sidney Greenblatt, proprietor of the Stiles Pharmacy in Moorestown, demanding that Greenblatt appear before the Board in Newark on December 6, 1983 with 28 original prescriptions and 11 patient profile cards.
Greenblatt disregarded the subpoena, and in January 1984 he and the pharmacy filed a complaint in the Law Division seeking an order to show cause to quash the subpoena on the ground that it failed to disclose required information regarding its purpose and if complied with would disrupt business and endanger patients. In its answer the Board asserted that the subpoena "was properly served, and is valid and authorized in all respects...." On motion the New Jersey Pharmaceutical Association was permitted to appear in the action as amicus curiae.
After oral argument, the Law Division issued a written opinion rejecting plaintiffs' attack on the constitutionality of the statutes, but accepting plaintiffs' position that the Board in pursuing the records acted illegally. The Board moved to alter *272 or amend the decision; however, the court entered a final order quashing the subpoena on December 19, 1984.
The Law Division Judge did not assess the validity of the subpoena itself. Rather, he stressed what he found to be the Board's violation of the copying requirement of N.J.S.A. 45:14-15, which allows the Board to seize original prescriptions during inspections. The Board, however, relied on the specific subpoena power granted by N.J.S.A. 45:1-18. The judge appears to have engrafted the elements of N.J.S.A. 45:14-15 onto N.J.S.A. 45:1-18.
N.J.S.A. 45:14-15 is a section of the act regulating the pharmacy profession in New Jersey. N.J.S.A. 45:14-1 et seq. That section, dating from 1933, declares a pharmacist's duties with respect to numbering and filing original prescriptions and confers upon the Board the power to take prescriptions from the premises as long as copies are left with the pharmacist:
... The board of pharmacy or any of its agents is hereby empowered to inspect the prescription files and other prescription records of a pharmacy and to remove from said files and take possession of any original prescription; providing, that the authorized agent removing or taking possession of an original prescription shall place in the file from which it was removed a copy certified by said person to be a true copy of the original prescription thus removed; provided further, that the original copy shall be returned by the board of pharmacy to the file from which it was removed after it has served the purpose for which it was removed. [N.J.S.A. 45:14-15].
It was under this section that the Board claims to have acted during an earlier inspection on November 23, 1983, asserting it offered to leave copies of the prescriptions, but that Greenblatt nonetheless refused to turn them over. Because of this resistance a subpoena was served on Greenblatt five days later, under authority of N.J.S.A. 45:1-18, a part of the Uniform Enforcement Act. N.J.S.A. 45:1-14 et seq. This act, adopted in 1978, created uniform disciplinary, investigative, and enforcement procedures for the various professional boards, including the Board of Pharmacy, within the Division of Consumer Affairs. N.J.S.A. 45:1-14. The Senate committee's statement declared:

*273 ... The act is deemed remedial, and does not alter any prior statutory enactments except those dealing with the substantive areas of investigative and enforcement powers and the bases for disciplinary action. Prior law is repealed and superseded only to the extent that it is inconsistent with the terms of this act. [Senate Labor, Industry and Professions Committee Statement, S. 497 (L. 1978, c. 73) (cited in N.J.S.A. 45:1-14)].
The subpoena power is contained in N.J.S.A. 45:1-18, and is one of several enumerated investigative devices. It reads:
Whenever it shall appear to any board, the director or the Attorney General that a person has engaged in, or is engaging in any act or practice declared unlawful by a statute or regulation administered by such board, or when the board, the director or the Attorney General shall deem it to be in the public interest to inquire whether any such violation may exist, the board or the director through the Attorney General, or the Attorney General acting independently, may exercise any of the following investigative powers:
a. Require any person to file on such form as may be prescribed, a statement or report in writing under oath, or otherwise, as to the facts and circumstances concerning the rendition of any service or conduct of any sale incidental to the discharge of any act or practice subject to an act or regulation administered by the board;
b. Examine under oath any person in connection with any act or practice subject to an act or regulation administered by the board;
c. Inspect any premises from which a licensed profession or occupation is conducted;
d. Examine any goods, ware or item used in the rendition of any professional or occupational service;
e. Examine any record, book, document, account or paper maintained by or for any professional or occupational licensee in the regular course of practicing such profession or engaging in such occupation;
f. For the purpose of preserving evidence of an unlawful act or practice, pursuant to an order of the Superior Court, impound any record, book, document, account, paper, goods, ware, or item used or maintained by or for any board licensee in the regular course of practicing such profession or engaging in such occupation. In such cases as may be necessary, the Superior Court may, on application of the Attorney General, issue an order sealing items or material subject to this subsection.

In order to accomplish the objectives of this act or any act or regulation administered by a board, the Attorney General may hold such investigative hearings as may be necessary and may issue subpoenas to compel the attendance of any person or the production of books, records or papers at any such hearing or inquiry. [N.J.S.A. 45:1-18 (emphasis added)].
The Law Division had before it plaintiffs' complaint to quash the subpoena on the grounds that the purpose of the subpoena was never communicated to Greenblatt, and that removal of the *274 records would disrupt the pharmacy's business and endanger patients. The trial judge made no findings or conclusions regarding the facial validity of the subpoena. He rested on the Board's earlier demand for the originals of the prescriptions without providing copies, noting that the plain language of N.J.S.A. 45:14-15 required that the agent seizing the prescription "shall place in the file from which it was removed a copy certified by said person to be a true copy...." The judge held that N.J.S.A. 45:14-15 contemplates simultaneous placement of a copy, not subsequent provision of a copy after the agent takes the slips to his office. He concluded that "the late hour demand for the originals  without copies being processed simultaneously  was unreasonable." As the remedy, the judge quashed the subpoena. The Board urges on appeal that the only issue before the court involved the subpoena statute, N.J.S.A. 45:1-18, which is silent as to any copying requirement. We agree.
No copying requirement is needed in the case of a subpoena, as the recipient of a subpoena need not produce the records until some future return date, thereby giving him ample opportunity to copy them. In effect, the trial judge created "a new test for the validity of a subpoena" under N.J.S.A. 45:1-18, namely, whether a prior oral request for documents under N.J.S.A. 45:14-15 was valid. A subpoena is a separate statutory tool which must stand or fall on its own merits. It is not invalidated by an alleged faulty effort to obtain the documents under the separate procedure provided by N.J.S.A. 45:14-15.
The Uniform Enforcement Act, of which N.J.S.A. 45:1-18 is a part, repeals and supersedes those prior laws which are "inconsistent" with it. N.J.S.A. 45:1-26. Even so, we do not find the subpoena provision inconsistent with the seizure provision of the Pharmacy Act. The subpoena power gives the Board an additional enforcement mechanism to use when those allowed by the Pharmacy Act prove unsuccessful. Under N.J.S.A. 45:1-18 the Board could have subpoenaed the records *275 without having first asked for the records under N.J.S.A. 45:14-15.
The New Jersey Pharmaceutical Association focuses its argument on N.J.S.A. 45:1-18f. From this subsection and from N.J.S.A. 45:14-15, it deduces that the Board "must have a Superior Court order and must supply a copy of any original prescription record to be seized." The Association argues that the subpoena power conferred by the last paragraph of N.J.S.A. 45:1-18 cannot be used to avoid the court order or the copying requirement and that the subpoena power may be used only to compel production of records at a hearing. It claims "the Attorney General did not issue the subpoena in connection with any alleged hearing."
The requirements of subsection f are permissive and subject to a finding of necessity, whereas the last paragraph of N.J.S.A. 45:1-18 is general and the subpoena power is available to the Attorney General where required to accomplish the objectives of the statutory powers granted to the board. We understand the prescriptions enumerated in the subpoena to have been sought in connection with a scheduled hearing; but, in any event, the statutory subpoena power is not limited to a hearing context. It is available for use in any inquiry into whether a violation exists as the statute specifically allows compulsion of records at a hearing "or inquiry." N.J.S.A. 45:1-18.
The test for the validity of a subpoena duces tecum was stated in State v. Cooper, 2 N.J. 540 (1949). See Pressler, Current N.J. Court Rules, Comment R. 1:9-2 (1986). A valid subpoena must specify its subject
... with reasonable certainty, and there must be a substantial showing that [the records] contain evidence relevant and material to the issue. If the specification is so broad and indefinite as to be oppressive and in excess of the demandant's necessities, the subpoena is not sustainable. [2 N.J. at 556].
The United States Supreme Court has adopted a similar standard with regard to administrative subpoenas:

*276 It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.... In addition, while the demand to inspect may be issued by the agency, in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply. [See v. Seattle, 387 U.S. 541, 544-545, 87 S.Ct. 1737, 1739-1740, 18 L.Ed.2d 943, 947 (1967) (footnote omitted)].
Accord United States v. DeGrosa, 405 F.2d 926, 929 (3d Cir.), cert. den. 394 U.S. 973, 89 S.Ct. 1465, 22 L.Ed.2d 753 (1969).
The subpoena was sufficiently specific and narrow in scope. It listed the 28 prescriptions by number and identified the patient profile cards by patient name. The judicial review requirement was satisfied in that plaintiffs had available and employed the tool of a civil action to quash the subpoena. R. 1:9-2.
Plaintiffs' protest that the subpoena did not state its purpose and their claim that Greenblatt was unaware of the Board's aims even during the November 23 inspection are without merit. The Board filed an affidavit of its investigator in which he said that when he served the subpoena on November 28 he "told Mr. Greenblatt that the subpoena was in respect to my routine pharmacy inspection of November 23, 1983, and called for the prescriptions and profiles that he didn't give me on that date." Greenblatt was given the five-page report of the November 23 inspection which listed the detected deficiencies, as well as the prescriptions later sought in the subpoena. In addition, prior to the November 23 inspection Greenblatt received a "penalty letter" regarding violations detected in a 1980 audit for which a hearing had already been scheduled for December 7, 1983.
On cross-appeal plaintiffs argue that the warrantless search and seizures permitted by N.J.S.A. 45:14-15 and N.J.S.A. 45:1-18c, d and e are violative of the Fourth, Fifth, and Fourteenth Amendments to the federal constitution.
*277 With regard to the Fourth Amendment, plaintiffs note that under Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981), a warrantless administrative search is constitutionally permissible only if it is necessary to further a regulatory scheme and if the federal regulatory presence is sufficiently comprehensive and defined that the persons regulated cannot help but be aware that they will be subject to periodic inspections undertaken for specific purposes. 452 U.S. at 600, 101 S.Ct. at 2538, 69 L.Ed.2d at 270.
This court recently rejected such a Fourth Amendment claim in State v. Rednor, 203 N.J. Super. 503 (App.Div. 1985). We held there that a warrantless audit of a pharmacy, which uncovered various criminal violations, was valid under the Fourth Amendment. The pharmacy industry is subject to pervasive and long-standing regulation, and therefore comes within a well-settled exception to the rule that administrative searches of private property are subject to the Fourth Amendment warrant requirements. Id. at 507-508. As was concluded in Rednor: "Defendant, having voluntarily engaged in a business subject to pervasive governmental control, had no expectation of privacy as would support a Fourth Amendment bar to this administrative inspection." Id. at 509.
Plaintiffs' Fifth Amendment contention appears to be that, because the Board never told Greenblatt of the purpose for which the records were sought, he was compelled to relinquish his privilege against self-incrimination and was denied due process. The trial judge correctly rejected this theory as follows:
... A blanket claim of self incrimination is insufficient to invoke the privilege. Furthermore, the Board of Pharmacy does not have criminal jurisdiction and can only impose civil penalties for statutory and regulatory violations. N.J.S.A. 45:1-21 and 22. The Board is also limited to seeking civil penalties for failure to obey a subpoena.
Further, the documents sought are business records which were not prepared by Greenblatt and therefore he cannot claim *278 Fifth Amendment protection. See Matter of Grand Jury Proceedings of Guarino, 104 N.J. 218 (1986).
We reverse the order to quash and remand to the Law Division for such further proceedings as may be necessary to update the demand for the sought after materials and such protective provisions as the court may deem appropriate.