695 A.2d 319

IN THE MATTER OF JOHN DOE AND ROE CORPORATION.

Superior Court of New Jersey
Appellate Division

Argued March 24, 1997—Decided June 20, 1997.

256

Before Judges BROCHIN, KESTIN and EICHEN.

*Angelo R. Bianchi* argued the cause for petitioners John Doe and Roe Corporation (*Bianchi & Bianchi,* attorneys; *Mr. Bianchi* and *Mark A. Wenczel,* on the brief).

*Linda A. Rinaldi,* Deputy Attorney General, argued the cause for respondent State of New Jersey (*Peter Verniero,* Attorney General of New Jersey, attorney; *Ms. Rinaldi,* of counsel and on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

The New Jersey Attorney General served investigative interrogatories on John Doe and Roe Corporation[1] pursuant to *N.J.S.A.* 2C:41–5. That statute reads in part as follows:

> a. Whenever the Attorney General determines that there exists a reasonable suspicion that any person or enterprise may have information or be in possession, custody, or control of any documentary materials relevant to an investigation under this chapter [Chapter 41, Racketeering], or whenever the Attorney General believes it to be in the public interest that an investigation be made pursuant to this chapter, he may, prior to the institution of a civil or criminal proceeding thereon, issue in writing, and cause to be served upon the person, an investigative interrogatory requiring him to answer and produce material for examination.

The attorney general served two sets of interrogatories, one on John Doe and one on Roe Corporation. Both sets were substantially identical. Each set consisted of 291 questions. Many of the questions had multiple subparts. The interrogatories also required the parties to whom they were addressed to produce all of the corporate records of Roe Corporation. A face sheet attached to each set of interrogatories recited that the information asked for was necessary in connection with the enforcement of the New Jersey Racketeering Law, *N.J.S.A.* 2C:41–1 *et seq.* and, although the language of the face sheet is ambiguous, it apparently was intended to allege that the suspected conduct which constituted

---

[1] The Law Division used these fictitious names to designate the individual and the corporation to whom the interrogatories were directed. We have adopted the same practice in this opinion.

racketeering was "[t]he control and financing of [Roe Corporation] and its owner, [John Doe], by Organized Crime."

*N.J.S.A.* 2C:41–5j reads in part as follows:

> At any time before the return date specified in the interrogatory, such person [*i.e.,* any person upon whom an investigative interrogatory has been served] may file in the Superior Court a petition for an order modifying or setting aside the interrogatory.... The petition shall specify each ground upon which the petitioner relies in seeking relief, and may be based upon any failure of the interrogatory to comply with the provisions of this section or upon any constitutional or other legal right or privilege of the petitioner. In such proceeding the Attorney General shall establish the existence of an investigation pursuant to this chapter and the nature and subject matter of the investigation.

Pursuant to this section, Doe and Roe petitioned the Law Division of the Superior Court "to set aside the Investigative Interrogatories and accompanying request for documents pursuant to *N.J.S.A.* 2C:41–5(j)."

Doe and Roe's petition alleged the following grounds for relief:

> (1) ... The investigative powers delegated to the attorney general under *N.J.S.A.* 2C:41–5 are unconstitutional [because] [t]hey impermissibly give the attorney general the power to act as prosecutor and grand jury.

> . . . . . . . .

> The attorney general has failed to satisfy *N.J.S.A.* 2C:41–5b(1) by failing to adequately "state the nature of the conduct constituting the alleged violation which is under investigation." ...

> (2) ... The investigation violates [Doe's] right to be free from unreasonable searches and seizures. *N.J.S.A.* 2C:41–5 does not require the attorney general to establish probable cause. Reasonable suspicion suffices....

> [N]o reasonable basis for the State's suspicion exists.

> (3) ... [T]he investigative interrogatories served upon [Doe] and [Roe] unconstitutionally deprive [Doe] of his right to due process of law....

> (4) ... On the basis of his reasonable fear that the questions put to him will tend to incriminate, [Doe] petitions this court to set aside the Investigative Interrogatories as they violate his right to be free from self-incrimination.

The Law Division (Honorable Richard J. Williams, A.J.S.C.) heard extensive argument on Doe and Roe's petition and on the State's motion to enforce its investigative interrogatories. On October 27, 1995, the petitioners argued their constitutional and statutory objections to the interrogatories. At the commencement of the hearing on that date, Judge Williams summarized his

understanding of the issues which petitioners were raising. To the issues which we have listed from the brief submitted in support of the petition, he added the following: "that the investigative interrogatories are overbroad, unduly burdensome, and unreasonably intrusive."

Judge Williams issued his comprehensive, published opinion sustaining the constitutionality of *N.J.S.A.* 2C:41–5 on January 31, 1996. *See In re Doe,* 294 *N.J.Super.* 108, 682 *A.*2d 753 (Law Div.1996). The court rejected the petitioners' contentions that the interrogatories should be set aside because petitioners were the intended targets of the State's investigation, *id.* at 123–26, 682 *A.*2d 753, but the court required further hearings to consider petitioners' contentions that the individual questions included in the interrogatories were unnecessarily and unfairly broad, vague, and intrusive. *Id.* at 127, 682 *A.*2d 753.

On February 23 and February 26, 1996, the hearings were held. As an initial matter, the court rejected the petitioners' contentions that the interrogatories should be set aside because the State had leaked Doe's and Roe's identity to the news media. The court then considered the interrogatories, one by one, and ruled on every objection to their form and substance that petitioners chose to raise. As a result of the arguments presented, the State withdrew or modified many of its interrogatories and the Court struck or modified many others. No copy of the interrogatories, either as originally served on petitioners or as ultimately modified, have been included in the record submitted to us. In their brief to our court, petitioners have not challenged any of the interrogatories because of their specific form or content.

These determinations by Judge Williams resulted in the entry of an interlocutory order dated March 26, 1996 requiring Roe Corporation to accord the State access to its documents and both petitioners to answer the interrogatories within fourteen days; a supplemental order dated April 23, 1996, ordering fines for noncompliance with the prior order; and a June 7, 1996 order denying reconsideration. Petitioners' appeal disputes these orders on

essentially the same grounds as those which they urged before the Law Division, except that they no longer challenge the form or content of individual questions.

█ With respect to all of the issues raised by petitioners' arguments before Judge Williams and dealt with in his published opinion, we affirm on the basis of that opinion. Petitioners also argue to us that they should be relieved from answering the investigative interrogatories because the identity of Doe and Roe and the racketeering activities of which they are suspected were disclosed to the news media and because the State failed to establish a statutory predicate for enforcement of the interrogatories. These arguments, based on the "leak" and the alleged failure to establish a statutory predicate, are not expressly dealt with in the published opinion or any of the subsequent orders. However, Judge Williams dealt with them in an informal ruling on the record.

In that ruling, Judge Williams held that the petitioners had not proved that the State was the source of the disclosure which resulted in newspaper stories identifying petitioners, their business activities, and their alleged connections with organized crime, and that, if some State employee was the source, the statute itself prescribed the exclusive remedy. We agree. *N.J.S.A.* 2C:41–5f states, in relevant part:

> Any person who shall disclose to any person other than the Attorney General or a person retained by the Attorney General as set forth above, the name of any person who receives an investigative interrogatory or any information obtained pursuant thereto, except in proceedings involving an alleged violation of this chapter and except as so directed by the Attorney General shall be guilty of a crime of the fourth degree.

The court does not have the authority to create any other remedy for the disclosures indicated by the record in this case.

█ *N.J.S.A.* 2C:41–5a permits an investigative interrogatory to be issued whenever the Attorney General determines that there is a "reasonable suspicion that any person or enterprise may have information or be in possession ... of any documentary materials relevant to an investigation" or "whenever the Attorney General

believes it to be in the public interest that an investigation be made" pursuant to the racketeering laws. As Judge Williams held, a showing of probable cause is not required either by the statute or by the Federal or State Constitution. *In re Doe,* 294 *N.J.Super.* at 119, 682 *A.*2d 753. The statute requires only "a reasonable suspicion" that the person to whom the interrogatory is directed "may have information" relevant to a present investigation or to an investigation which the Attorney General believes would be in the public interest. These statements are merely iterations of the basic proposition that the Attorney General has broad authority and discretion to conduct an investigation into any suspected criminal activity. This is an authority and discretion which cannot be circumscribed by a court except insofar as specific investigative demands infringe unreasonably on legally protected rights of individuals. *Cf. In re Petition to Compel Testimony of Tuso,* 73 *N.J.* 575, 376 *A.*2d 895 (1977) (finding that order for witness to testify before grand jury was proper exercise of Attorney General's broad authority to investigate and prosecute crimes; court could not substitute its judgment for the Attorney General by determining that the State did not need the information or the testimony sought).

In the course of these proceedings, the State "request[ed] permission to submit an affidavit, *in camera,* which [would state] the reasons for the investigation and establish[ ] the nexus between the investigation and the specific questions and demands made by these investigative interrogatories." In support of this request, the State filed an affidavit of a State Police officer who alleged that he was responsible for and familiar with the facts surrounding the investigation in connection with which the interrogatories were served on Doe and Roe. His affidavit states:

> [T]he disclosure of the information upon which this investigation is based would compromise this investigation and other investigations into organized crime, as well as endanger the personal safety of confidential sources that are presently active in both this investigation and other investigations into organized crime. Consequently, it is essential that this information remain confidential at this point in time.

No *in camera* affidavit was submitted. However, in an apparent change of position, petitioners contended that the interrogato-

ries should be set aside because they were targets of a criminal investigation. This argument concedes the existence of "an investigation." This is one of the statutory predicates for the issuance of the interrogatories which petitioners had argued was missing from the record. Petitioners' contention that they are the targets of a criminal investigation obviated the need for the *in camera* affidavit to show that such an investigation is in progress.

Judge Williams properly focused his attention on whether any of the questions or document demands were unfairly oppressive because of their breadth, irrelevance to any possible subject of criminal investigation, or unnecessary intrusiveness into personal affairs. He held that the questions as ultimately modified did not suffer from any of these defects, and petitioners' omission to include the interrogatories in the record on appeal implies their acquiescence in that conclusion.

The orders appealed from are therefore affirmed.